IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA MEDICAL RESEARCH FOUNDATION,<br><br>    Plaintiff,<br><br>vs.<br><br>ELI LILLY & COMPANY,<br><br>    Defendant. | No. CIV-01-456-C |

## ORDER

Before the Court are Plaintiff's Second Motion in Limine to Exclude the Testimony of Defendant's Legal Expert Q. Todd Dickinson and Defendant's Response thereto. For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

### BACKGROUND

This case concerns U.S. Patent No. 5,009,889 (the "'889 Patent") that was issued to Drs. Taylor and Esmon (the "Inventors") and assigned to Plaintiff. In 1994, Plaintiff licensed the '889 Patent to Defendant, who subsequently obtained United States Food and Drug Administration approval for a medicine known as Xigris™ for the treatment of sepsis. Plaintiff alleges that Xigris™ is covered by the '889 patent and that Defendant owes royalties under the license agreement. However, Defendant asserts that the '889 Patent does not cover Xigris™ and that the '889 Patent is nevertheless invalid because of inequitable conduct on the part of Plaintiff and the Inventors in procuring the '889 Patent.



The present dispute relates to the proposed testimony of Q. Todd Dickinson, Defendant's patent law expert. Plaintiff seeks to exclude Mr. Dickinson's testimony at trial because it allegedly would include impermissible recitation of applicable law, does not meet the requirements of Fed. R. Evid. 702 regulating expert testimony, and is generally irrelevant and prejudicial. In response, Defendant argues that Plaintiff misconstrues the nature of Mr. Dickinson's testimony, which is relevant, reliable, and helpful to the trier of fact.

## ADMISSIBILITY OF EXPERT TESTIMONY

Brief identification of the Rules of Evidence governing admissibility is warranted. Under Rule 402, "[e]vidence which is not relevant is not admissible," with "relevant evidence" being defined by Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 & 402. In the case of experts, admission requires the testimony not only be relevant but also helpful to the trier of fact and reliable. See Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Therefore, Mr. Dickinson's testimony must be relevant, reliable, and able to assist the trier of fact to understand the evidence presented at trial or to determine a fact in issue.

## DISCUSSION

Mr. Dickinson is apparently prepared to testify about: (1) certain procedures in place at the Patent and Trademark Office (the "PTO") for examining patent applications, as well as background information about other arcane patent topics such as patent prosecution, review process, and patent term extension; (2) the regulatory requirements regarding the duties of disclosure and candor and good faith; (3) what types of information examiners consider important in determining whether patents should be allowed; (4) whether certain information[1] would have been material to the PTO, including information related to the "reasonable examiner" standard; and (5) whether personnel breached their duty of candor in making certain factual representations. Pl.'s Mot. Ex. 1 (Expert Report) at 1, ¶ 1; Def.'s Resp. at 1. Mr. Dickinson's proffered testimony may be viewed as covering two general areas: PTO practices and procedures and the materiality of alleged misrepresentations and omissions made while prosecuting the '889 Patent application. The Court addresses each accordingly.

It is worth noting before venturing into a discussion of the arguments that this matter is unusual not only because it arises so far in advance of trial but also because Mr. Dickinson has not yet been deposed. Thus, the Court bases its decision on Mr. Dickinson's Expert Report and the representations made in the briefing.

---

[1] Defendant plans to present evidence of Plaintiff's alleged misstatements and omissions during the trial separate and apart from Mr. Dickinson's testimony. See Def.'s Resp. at 3-6.

3

A.     **PTO Practices and Procedures**

There is ample authority as well as good reason to allow expert testimony regarding the practices and procedures of the PTO.[2] This type of generalized testimony is routinely admitted if: (1) the expert is qualified; (2) the testimony addresses a subject matter on which the fact finder can be assisted by an expert; (3) the testimony is reliable; and (4) the testimony "fits" the facts of the case. Fed. R. Evid. 702 advisory committee's note.

The PTO is a specialized institution with a particular body of policies and procedures that govern its operation. Thus, it is likely that a succinct explanation of the relevant practices and procedures would diffuse some of the mystery surrounding patents and the application process generally, clarify pertinent issues, and assist the presentation of evidence. Moreover, Mr. Dickinson's impressive credentials and experience in the field seem to qualify him to testify about applicable PTO practices and procedures. See Pl's. Ex. 1 (Expert Report) at 15-21. However, Plaintiff raises the troubling issue of whether Mr. Dickinson's report references the procedures and standards in place from 1987 to 1991, the time during which the '899 Patent application was prosecuted. Pl.'s Mot. at 12-13. Specifically, Plaintiff notes that "[t]he rules and regulations at that time were different in form and scope from the rules Dickinson says he is prepared to testify about and apply." Pl.'s Mot. at 12-13. In response, Defendant notes that "the substantive statements in Mr. Dickinson's Report are

---

[2] Plaintiff argues that Mr. Dickinson's testimony is not proffered to explain practice and procedure at the PTO because of the absence of those topics in his report and its legal focus. Pl.'s Mot. at 5. However, Mr. Dickinson's Expert Report provides sufficient details about PTO practices and procedures to permit his testimony on this topic. See Pl.'s Ex. 1 at 4-6.

4

clearly directed to the applicable 'reasonable examiner' standard." Def.'s Resp. at 10 n.4. Clearly, the only practices, procedures, and regulations that are relevant to this case are those that existed in the 1987 to 1991 time frame.[3] Therefore, Mr. Dickinson's testimony regarding PTO practices and procedures shall be limited to those in place during the prosecution of the '889 Patent application. Obviously, Plaintiff is not precluded from challenging Mr. Dickinson's certification as an expert or the relevancy of his testimony at trial.

## B.   Materiality of Misrepresentations and Omissions

The determination about whether to permit Mr. Dickinson to testify about the materiality of the alleged misrepresentations and omissions (including whether the duties of good faith and candor were also breached) is more complicated.

As a preliminary matter, there has been no decision in this case regarding whether the factual underpinnings of the inequitable conduct defense would be submitted to the jury. A determination of inequitable conduct depends on two threshold findings of fact: that the false or omitted information was material and that the patentee acted with intent to deceive. See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1318-19 (Fed. Cir. 2000). It is well-settled that the ultimate question of whether inequitable conduct occurred in patent proceedings is equitable in nature and, thus, committed to the trial court's discretion. Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 541 (Fed Cir. 1990). The

---

[3] Because testimony regarding the materiality standard and the duties of disclosure and candor and good faith is excluded on other grounds below, it is unnecessary to address whether Mr. Dickinson recites or relies on inapplicable formulations.

5

Federal Circuit has observed that "[t]here are a variety of ways in which the district court may choose to handle the issue of inequitable conduct during a jury trial," including: reserving the entire issue of inequitable conduct for the court; submitting special interrogatories to the jury on the facts of materiality and intent; or instructing the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct. Hebert v. Lisle Corp., 99 F.3d 1109, 1114 (Fed. Cir. 1996). The trial court's choice of procedure will not be disturbed absent clear showing of prejudice or failure to achieve a fair trial. See id.

Although parties may agree to have a jury decide these issues, materiality and intent are "ordinarily for the court to resolve, accompanied by findings of fact in accordance with Rule 52(a)." General Electro Music Corp. v. Samick Music Corp., 19 F.3d 1405, 1408 (Fed. Cir. 1994) (noting that parties consented to trial of the factual issues by the jury); see also Modine Mfg. Co., 917 F.2d at 542 (noting that issue of inequitable conduct was submitted to the jury). Here, neither Plaintiff nor Defendant directly address whether it is desirable to submit either the fact issues or the ultimate question of inequitable conduct to the jury. Plaintiff suggests the Court will make the relevant findings of fact and asserts that there is no right to jury trial on inequitable conduct. Pl.'s Mot. at 3 & 6. Defendant refers to the testimony assisting a generic fact finder but later notes that concerns regarding jury confusion are inapplicable "where the Court acts as trier of fact, and can filter the expert testimony at trial." Def.'s Resp. at 12-13 & 17. Based on their treatment of this matter, it appears

6

unlikely that the parties contemplate jury findings on these issues. Absent an explicit agreement regarding submission and because "disputed issues of fact underlying the issue of inequitable conduct are not [generally] jury questions," the Court reserves to itself the entire issue of inequitable conduct, including making factual findings regarding materiality and intent. Gen. Electro Music Corp., 19 F.3d at 1408; Pro Tec, Inc. v. Life-Like Products, Inc., 986 F. Supp. 27, 31 (D. Me. 1997) (deciding to reserve the issue of inequitable conduct for the court after a full factual hearing of the relevant circumstances at trial because agreement by the parties to submit the question seemed unlikely); but see Revlon Consumer Prods. Corp. v. L'Oreal S.A., No. CIV. A. 96-192 MMS, 1997 WL 158281 at *3 (D. Del. Mar. 26, 1997) (opting to submit special interrogatories on the facts of materiality and intent when parties failed to agree to submit the entire issue of inequitable conduct to the jury).

Having thus identified the relevant fact finder, the Court must determine whether Mr. Dickinson's proposed testimony regarding materiality is admissible according to the standard set forth above. Despite Plaintiff's arguments to the contrary, the Court is persuaded that testimony regarding an element of a defense falls within the generous definition of "relevant evidence." See Fed. R. Evid. 401. Although a substantial portion of Plaintiff's motion is devoted to whether the testimony is reliable under Rule 702 and Daubert principles, the Court forgoes that tedious inquiry to examine whether Mr. Dickinson's testimony meets Rule 702's other requirement that it "assist the trier of fact to understand the evidence or to determine a fact in issue."

The touchstone of admissibility for expert testimony is its "helpfulness to the trier of fact." Gust v. Jones, 162 F.3d 587, 594 (10th Cir. 1998) (citation omitted) (upholding trial court's exclusion of accident reconstruction expert). In this case, Mr. Dickinson's explanation of what information examiners generally consider important, including the concept of utility, would be helpful. Mr. Dickinson's experience as the director of the PTO and in private practice constitute an ample basis of experience to permit him to testify on this topic as an expert.

However, the Court is not persuaded that his opinion regarding the materiality of alleged misstatements and omissions or explanation of the underlying regulatory duties and legal standards would assist the Court. The Court is under no obligation to defer to an expert's recitation of the law or legal conclusion. See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1562 (Fed. Cir. 1988). As decided above, the Court will make the finding regarding materiality and is capable of ascertaining the proper legal standard and applying it to the evidence presented. Therefore, this proposed testimony does not promise to be helpful in assisting the Court either to understand the evidence or to determine whether alleged misrepresentations or omissions were material. See Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994) (observing that trial court properly excluded expert testimony that was offered to explain a question the jury was capable of assessing for itself because it would not even marginally assist the trier of fact and constituted "needless presentation" under Fed. R. Evid. 403). Moreover, the Court agrees that Mr. Dickinson's

wholly inconclusive opinion that the representations made to the PTO "could reasonably be found to be material misrepresentations and a breach of the rules that applicants and their authorized representatives were obligated to follow when prosecuting the patent application that led to the 889 Patent" will not appreciably help the Court determine a fact at issue. Pl.'s Mot. at 6 & Ex. 1 (Expert Report) at ¶ 12; cf. United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir. 1993) (finding expert's use of conditional "could" in expressing conclusion was "neither unusual nor disqualifying as to her testimony"). Thus, the Court finds that Mr. Dickinson's testimony that the alleged misrepresentations and omissions could be considered material does not meet the assistance requirement of Rule 702.

In addition to being only negligibly helpful, Mr. Dickinson's proffered materiality testimony defines the applicable legal standards and applies them to the evidence. Although some courts have permitted patent law experts to testify regarding inequitable conduct[4], Plaintiff is correct that it is generally inappropriate for an expert to state the law and apply that law to the facts at issue. Tenth Circuit precedent is clear that "[i]n no instance can a witness be permitted to define the law of the case" or attempt "to define the legal parameters within which the [trier of fact] must exercise its fact-finding function." Specht v. Jensen, 853

---

[4] See, e.g., Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988) (referring to testimony of experts that they saw no evidence of deceptive intent); Zeneca Ltd. v. Novopharm Ltd., No. 96-1364, 1997 WL 168318 (Fed. Cir. 1997) (upholding district court's finding no intent to deceive that was based on expert witness' credibility and evidence); but see Revlon Consumer Prods. Corp.,1997 WL 158281 at *3 (D. Del. 1997) (prohibiting testimony by expert on substantive issues of patent law, including inequitable conduct).

9

F.2d 805, 809-10 (10th Cir. 1988); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1246 (10th Cir. 2000) (noting that expert did not impermissibly seek to apply the facts of the case to the criteria he proffered); United States v. Lewis, 240 F.3d 866, 869 (10th Cir. 2001) (upholding admission of expert testimony regarding the general requirements of Oklahoma law regarding commercial area hunting licenses where expert did not state any opinion as to whether licensing requirements applied to the defendant). Although the proffered testimony goes only to the issue of materiality, a question of fact, Mr. Dickinson's articulation of a legal standard and application of that standard to the evidence is problematic.

For these reasons, Mr. Dickinson's testimony regarding the materiality issue is limited to a general explanation of what types of information are considered important in deciding whether to allow a patent. Mr. Dickinson shall not be permitted to opine on the possible materiality of the alleged misstatements and omissions by Plaintiff and the Inventors during the prosecution of the '889 Patent or to define relevant legal standards.

## CONCLUSION

Accordingly, Plaintiff's Second Motion in Limine to Exclude Testimony of Defendant's Legal Expert, Q. Todd Dickinson, is GRANTED in part and DENIED in part. Specifically, the Court finds Mr. Dickinson's proposed testimony on the following topics admissible: the practices and procedures that applied during the prosecution of the '889 Patent application; background information regarding patent prosecution, the review process, and patent term extension; and what types of information examiners consider important in

determining whether patents should be allowed. In contrast, testimony by Mr. Dickinson regarding the regulatory requirements regarding the duties of disclosure and candor and good faith and his opinion related to the materiality of alleged misrepresentations and omissions by Plaintiff or the Inventors and whether personnel breached their duty of candor in making certain factual representations are excluded.

IT IS SO ORDERED this __17__ day of December, 2002.

ROBIN J. CAUTHRON
CHIEF UNITED STATES DISTRICT JUDGE